1  TOMIO B. NARITA (SBN 156576)
   tnarita@snllp.com
2  ARVIN C. LUGAY (SBN 242599)
   alugay@snllp.com
3  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
4  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
5  Facsimile:  (415) 352-2625

6
7  Attorneys for Defendants
   Janalie Henriques and
8  Hunt & Henriques

9                 UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11                  BAKERSFIELD DIVISION

12

13  LINDA D. MORIARITY,            )   CASE NO.: 1:11-cv-01208-JLT
                                   )
14             Plaintiff,          )   **NOTICE OF MOTION AND**
                                   )   **MOTION OF DEFENDANTS FOR**
15             v.                  )   **SUMMARY JUDGMENT;**
                                   )   **MEMORANDUM OF POINTS AND**
16                                 )   **AUTHORITIES IN SUPPORT**
   JANALIE HENRIQUES and HUNT      )
17  & HENRIQUES LAW FIRM,          )
                                   )   Date:    April 17, 2013,
18             Defendants.         )   Time:    9:30 a.m.
                                   )   Crtrm.:
19                                 )
20  _____)

21                                     The Honorable Jennifer L. Thurston

22

23

24

25

26

27

28

1  TO PLAINTIFF IN PRO PER:

2      PLEASE TAKE NOTICE that on April 17, 2013, at 9:30 a.m., or as soon

3  thereafter as the matter may be heard in this Court, which is located at 510 19th

4  Street, Bakersfield, California, 93301, the Honorable Jennifer L. Thurston

5  presiding, defendants Janalie Henriques ("Henriques") and Hunt & Henriques Law

6  Firm ("Hunt & Henriques") (collectively "Defendants") will and hereby do move

7  this Court for an Order, pursuant to Rule 56 of the Federal Rules of Civil

8  Procedure, granting summary judgment in their favor on all claims.

9      This motion is made on the grounds that all of Plaintiff's claims seek to

10  establish facts that would undermine the findings made in the prior state court

11  action between her and Defendants, and they are therefore barred as a matter of

12  law by the *Rooker-Feldman* doctrine.  This Court lacks subject matter jurisdiction

13  to adjudicate them.  For the same reasons, Plaintiff's claims are barred under

14  principles of collateral estoppel.

15      This motion will be based upon this Notice of Motion and Motion, the

16  Memorandum of Points and Authorities in Support of the Motion, the Request for

17  Judicial Notice in Support of the Motion, the Declaration of Michael Hunt in

18  Support of the Motion, all of the records on file in this action, and upon such other

19  and further evidence or argument that the Court may permit at the hearing in this

20  matter.

21  //

22  //

23  //

1   DATED: March 12, 2013                    SIMMONDS & NARITA LLP
2                                            TOMIO B. NARITA
                                             ARVIN C. LUGAY
3

4
                                      By:   /s/Arvin C. Lugay
5                                            Arvin C. Lugay
6                                            Attorneys for defendants
                                             Janalie Henriques and
7                                            Hunt & Henriques

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    The State Court Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    The Federal Court Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Standards Governing Summary Judgment . . . . . . . . . . . . . . . . . . . . . 5

      B.    The Law Governing The *Rooker-Feldman* Doctrine . . . . . . . . . . . . 5

      C.    Moriarity's Claims Are Barred By
            The Rooker-Feldman Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      D.    Moriarity's Claims Are Barred By Collateral Estoppel . . . . . . . . . 11

      E.    To The Extent Moriarity Seeks To Allege A
            Section 1692g(b) Claim It Also Fails . . . . . . . . . . . . . . . . . . . . . . . 13

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bianchi v. Rylaarsdam*
334 F.3d 895 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*Bryant v. Gordon & Wong Group, P.C.*
681 F. Supp. 2d 1205 (E.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Devereaux v. Abbey*
263 F.3d 1070 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*District of Columbia Court of Appeals v. Feldman*
460 U.S. 462 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Doe & Assocs. Law Offices v. Napolitano*
252 F.3d 1026 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Durkin v. Equifax Check Servs., Inc.*
406 F.3d 410 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*
544 U.S. 280 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Federal Election Comm'n v. Toledano*
317 F.3d 939 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fleming v. Gordon & Wong Law Group, P.C.*
723 F. Supp. 2d 1219 (N.D. Cal 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 11

*Grant v. Unifund CCR Partners, et al.*
842 F. Supp. 2d 1234 (C.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

*In Re Green*
198 B.R. 564 (B.A.P. 9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In Re Younie*
211 B.R. 367 (B.A.P. 9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kelly v. Med-1 Solutions, LLC*
548 F.3d 600 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11

*Mahon v. Credit Bureau of Placer County, Inc.*
171 F.3d 1197 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Migra v. Warren City School Dist. Bd. Of Educ.*
465 U.S. 75 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Parkland Hosiery Co. v. Shore*
429 U.S. 322 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rooker v. Fidelity Trust Co.*
263 U.S. 413 (1923). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Reusser v. Wachovia Bank, N.A.*
515 F.3d 855 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*
138 F.3d 772 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Williams v. Cavalry Portfolio Services, LLC*
2010 WL 2889656 (C.D. Cal. July 20, 2010). . . . . . . . . . . . . . . . . . . . 8, 9, 10, 11

**STATE CASES**

*Fitzgerald v. Herzer*
78 Cal. App. 2d 127 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Murray v. Alaska Airlines, Inc.*
50 Cal. 4th 860 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Simms*
32 Cal. 3d 468 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**FEDERAL STATUTES**

Fair Debt Collection Practices Act,
    15 U.S.C. § 1692g(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 15
    § 1692g(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 14, 15
    § 1692e(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    § 1692e(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    § 1692f. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    28 U.S.C. § 1738 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Rules of Civil Procedure
    Rule 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATE STATUTES**

California Code of Civil Procedure,
    § 585(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Rosenthal Fair Debt Collection Practices Act,
    Cal. Civ. Code § 1788.17. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Over two years ago, plaintiff Linda D. Moriarity ("Moriarity") was served with the summons and complaint in a collection lawsuit filed against her in the Superior Court of California, County of Kern.  The case was filed by the firm of Hunt & Henriques on behalf of its client, FIA Card Services, N.A. ("FIA").[1] Moriarity never responded to the complaint, so FIA submitted a request for entry of a default judgment.  On December 6, 2010, the state court entered judgment against Moriarity, finding her liable to FIA in the amount of $7,762.31.

Moriarity waited nearly two years before filing a motion to vacate the judgment, claiming she had never been served with the complaint.  The state court heard the motion, and denied it.

On July 21, 2011, Moriarity filed this case.  To support her claims here, Moriarity wants the trier of fact in this Court to find that: 1) she was never served with the state court complaint, so the default judgment was improper, and 2) she does not owe the debt at issue in the State Court Action.

In other words, Moriarity is pursuing claims which would require this Court to make factual findings that would undermine the validity of the state court

---

[1] A copy of the complaint that was filed against Moriarity, as well as the proof of service of the summons and complaint, in the action entitled *FIA Card Services, N.A. v. Linda D. Moriarity*, case number M-1502-CL-18384 before the Superior Court of California, County of Kern, East Division, Mojave Branch (hereinafter, the "State Court Action"), are attached as Exhibits A and B, respectively, to the Request For Judicial Notice In Support Of Defendants' Motion For Summary Judgment ("RJN"), filed and served herewith.

judgment.  That judgment is based upon a finding that Moriarity was properly

served with the complaint, that she does owe the financial obligation to FIA as

alleged in the State Court Action, and that she is liable to FIA in the amount of

$7,762.31.  She cannot prevail on her claims in this Court without attacking the

findings that underlie the judgment.

The *Rooker-Feldman* doctrine bars claims like these, made by state court

losers, like Moriarity, who file subsequent federal court actions that seek to

undermine state court judgments.[2]  Moriarity has already filed a motion seeking to

set aside the judgment in the State Court Action, but her motion was recently

denied. This Court lacks subject matter jurisdiction over her claims.

For the same reasons, Moriarity's claims are barred by the doctrine of

collateral estoppel.  Even a judgment obtained by default is conclusive as to all the

issues raised by the complaint, and the judgment and the findings that underlie it

are as binding on Moriarity as if the judgment had been entered against her after a

full trial on the merits.

Moriarity's state law claims are also barred by California's litigation

privilege.  The claims are based upon the contents of communications made in

connection with the State Court Action and therefore must fail.

Finally, to the extent Moriarity seeks to assert a claim under section

1692g(b) of the Fair Debt Collection Practices Act ("FDCPA"), the claim fails.

Hunt & Henriques sent her the notice required by section 1692g(a) of the FDCPA,

---

[2]  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

and Moriarity never sent a timely written request for validation in response to the notice.  Summary judgment should be entered for Defendants on all claims.

## II.   STATEMENT OF FACTS

On May 12, 2010, FIA retained Hunt & Henriques to collect an FIA credit card account under the name of Linda D. Moriarity, with an account number ending in 1078 (the "Account").  *See* Declaration of Michael Hunt In Support Of Defendants' Motion For Summary Judgment ("Hunt Decl."), ¶ 2.  Defendant Janalie Henriques is a partner at Hunt & Henriques.  *Id*. at ¶ 6.   On May 20, 2010, the firm sent Moriarity a letter, advising her that FIA has retained the firm to make a demand for payment in full on her the Account and informing of her right to dispute the debt or any portion of it.  *See id.* at ¶ 3, Ex. A.  The letter was not returned to Hunt & Henriques as undeliverable, and Moriarity did not send a timely written request for validation in response to the letter.  *See id.* at ¶¶ 3-4.  In fact, the first written correspondence that Hunt & Henriques received from Moriarity regarding the Account was over five months later, when it received a letter dated November 7, 2010.   *See id.* at ¶ 5, Ex. B.

### A.   The State Court Action

On July 20, 2010, Hunt & Henriques filed the complaint in the State Court Action against Moriarity on behalf of FIA.  *See* RJN, Ex. A.  Hunt & Henriques hired a process server to serve Moriarity with the summons and complaint.  *See* RJN, Ex. B.  On August 5, 2010, the process server perfected service by personally serving the summons and complaint on Moriarity.  *See id*.

On November 9, 2010, Hunt & Henriques filed a request for entry of default judgment against Moriarity.  *See* RJN Ex. C.  The court subsequently entered judgment in favor of FIA on December 6, 2010 for the amount of $7,762.31.  *See id.*, Ex. C.  Subsequently, on November 30, 2012, Moriarity filed a motion to set aside the judgment in the State Court Action, claiming that she was never properly served with the complaint in the State Court Action.  *Id.* Ex. D.  On January 17, 2013, the Court denied the motion.  *See id.* at Ex. E.  The court found that the "summons and complaint were properly served," and that Moriarity "failed to in a timely fashion bring her motion before the court."  *Id.*  As a result, the court also held that "judgment was properly taken and that Defendant failed to quickly, properly, and timely file her motion."  *Id.*

### B.    The Federal Court Action

On July 21, 2011, Moriarity filed the present action, and she iled a First Amended Complaint (the "FAC") on September 16, 2011.  *See* Documents 1 and 11.  In the FAC, Moriarity admits that on May 20, 2010, she received a "debt validation letter from Hunt & Henriques . . . "  *See* FAC, ¶ 13.  She alleges that after receiving that letter, she "notified" Hunt & Henriques on May 25, 2010, that the Account was not hers and that she  "demanded validation of this alleged debt . . ."  *See id.* at ¶ 24.  The FAC, however, does not allege that Moriarity ever sent a written request for validation of the alleged debt.

Moriarity claims she did not learn about the complaint in the State Court Action until November 2010 "upon receiving from Defendants, their request for Default Judgment . . ."  *See* FAC, ¶ 17.  She claims that on November 7, 2010, she

sent Defendants a "Notice Denying Service."  *See id.* at ¶ 18.  She does not claim

she ever filed an appearance in the state court case or that she opposed the request

for entry of default judgment.

Based on these allegations, Moriarity alleges Defendants violated sections

1692e(2), 1692e(8), 1692g(b), and 1692f of the FDCPA, as well as section

1788.17 of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA").

## III.   ARGUMENT

### A.   Standards Governing Summary Judgment

Summary judgment "shall" be granted if "there is no genuine dispute as to

any material fact and the moving party is entitled to judgment as a matter of law."

*See* Fed. R. Civ. Proc. 56(a).  As the moving party, a defendant may discharge the

burden by "'showing' – that is, pointing out to the district court – that there is an

absence of evidence to support the nonmoving party's case."  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986); *accord Devereaux v. Abbey*, 263 F.3d 1070,

1076 (9th Cir. 2001) (quoting *Celotex*).

To survive this motion for summary judgment, Moriarity "must present

competent evidence that creates a genuine issue of material fact."  *See Federal*

*Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002).  The materiality

of a fact is determined by the underlying substantive law.  *See State of Calif., on*

*Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 782

(9th Cir. 1998).  "In short, 'summary judgment is appropriate if, on the record as a

whole, a rational trier of fact could not find for the non-moving party.'"  *Durkin v.*

*Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (affirming summary judgment on FDCPA claims).

### B.    The Law Governing The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  "The purpose of the doctrine is to protect state judgments from collateral federal attack." *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir.2001).  *Rooker-Feldman* prevents litigants from attacking the finding underlying a state court judgment by filing a subsequent federal lawsuit, "no matter how erroneous or unconstitutional the state court judgment may be. (citations)."  *Kelly v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008).  The *Rooker-Feldman* doctrine "applies not only to claims that were actually raised before the state court, but also to claims that are **inextricably intertwined** with state court determinations." *Id*. (citation omitted, emphasis added).

Thus, the *Rooker-Feldman* doctrine can apply even if the plaintiff has not explicitly referred to the state court judgment, nor directly contested the merits of the judgment.  A claim made in federal court is "inextricably intertwined" with a state court decision and constitutes an impermissible *de facto* appeal if "the adjudication of the federal claims would **undercut the state ruling or require the district court to interpret the application of state laws or procedural rules** . . .

1
2
3
4
5
6

." *Reusser v. Wachovia Bank, N.A.*, 515 F.3d 855, 859 (9th Cir. 2008) (emphasis added), *quoting Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003); *see also Doe & Associates*, 252 F.3d at 1030 ("Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined.").

7
8
9
10
11
12
13
14
15
16

　　In *Kelly*, the plaintiffs alleged that the state court judgments obtained by defendants included sums for attorneys' fees that were not permitted by contract or law. *See Kelley,* 548 F.3d at 602.  According to Plaintiffs, their FDCPA claims were not barred by the *Rooker-Feldman* doctrine, because they were only challenging "defendants' *representations* and *requests* related to attorney fees, and not the state court judgments granting those requests." *Id.* at 604.  The *Kelly* court rejected this argument, however, noting that the state court had already determined the attorney's fees were proper, and the district court lacked jurisdiction to rule that the holding was erroneous:

17
18
19
20
21
22

> Because defendants needed to prevail in state court in order to capitalize on the alleged fraud, the FDCPA claims that plaintiffs bring ultimately require us to evaluate the state court judgments.  We could not determine that defendants' representations and requests related to attorney fees violated the law without determining that the state court erred by issuing judgments granting the attorney fees.

*Id.* at 605.

23
24
25
26
27
28

　　This Court, and other district courts in California, have held that the *Rooker-Feldman* doctrine bars litigants from pursuing FDCPA claims based on allegations that a default judgment was improper, either because the debtor allegedly was not served, or allegedly does not owe the debt as adjudicated by the state court. *See Grant v. Unifund CCR Partners, et al.,* 842 F. Supp. 2d 1234

(C.D. Cal. 2012); *Bryant v. Gordon & Wong Group, P.C.*, 681 F. Supp. 2d 1205 (E.D. Cal. 2010); *Williams v. Cavalry Portfolio Services, LLC*, 2010 WL 2889656 (C.D. Cal. July 20, 2010); *Fleming v. Gordon & Wong Law Group, P.C.*, 723 F. Supp. 2d 1219 (N.D. Cal 2010).

In *Grant*, plaintiff filed FDCPA and state law claims against a debt buyer, alleging that the default judgment entered against her was improper, because she allegedly was never served with the complaint, did not owe the money, and because the judgment was based on "false and fraudulent" affidavits. *See Grant*, 842 F. Supp. 2d at 1239.  These claims were all barred by *Rooker-Feldman*:

> Were the Court to rule that Unifund CCR committed any of those alleged wrongs, it "would undercut the state ruling" that plaintiff was in fact served with a copy of the summons and complaint, owed the debt to Unifund CCR, and authorized Unifund CCR to execute a Writ of Execution. Accordingly, pursuant to the Rooker– Feldman doctrine, the Court cannot entertain any claims premised on those alleged wrongs.

*Id*. (citation omitted).

In *Bryant*, the plaintiff sued a law firm under the FDCPA and Rosenthal Act, claiming he had never been served with the collection complaint, and that "out of the blue" he discovered his checking and savings accounts had been garnished.  *See Bryant*, 681 F. Supp. 2d at 1206.  The court noted that by "disputing the garnishment of his accounts, Plaintiff is inherently challenging the entry of default against him and the writ of execution that authorized the garnishment." *Id*. at 1208.  Summary judgment was granted for defendant under the *Rooker-Feldman* doctrine, because plaintiff's claims sought to undermine the judgment entered against him:

> The net effect is that Plaintiff is seeking to undermine the state court judgments. These judgments were rendered before the current district court proceeding, and any action by this Court in favor of Plaintiff on his FDCPA or RFDCPA claims would necessarily require review of those state court judgments. The *Rooker-Feldman* doctrine specifically bars this Court from doing so. If Plaintiff believes he has been wronged by the actions of the state court, he must turn to the state for remedy. This Court lacks jurisdiction to provide redress for Plaintiff's claims.

*Id.*

Similarly, in *Williams*, the plaintiff's FDCPA claims challenged a default judgment entered against him in a collection action. *See Williams*, 2010 WL 2889656 at *1. He claimed he had never been served with the complaint, and that he did not owe the money. *Id.* at *3. This Court observed that plaintiff's claims hinged on two issues: 1) whether plaintiff was liable for the debt, and 2) whether plaintiff was properly served. *Id.* In finding the plaintiff's claims barred by *Rooker-Feldman*, this Court reasoned:

> By way of default judgment, the state court found that Plaintiff was properly served and that he is liable for the debt. [citation omitted]. For this Court to exercise jurisdiction over these claims would be to review and undermine the state-court judgment. Plaintiff is essentially the losing party in state court who seeks relief from the default judgment. Such relief is precluded by *Rooker-Feldman*. [citations omitted].

*See id.*

In *Fleming*, plaintiff alleged that a law firm had violated the FDCPA by attempting to garnish an amount that was not authorized by the Writ of Execution issued following entry of a default judgment. *See Fleming*, 723 F. Supp. 2d at 1222-23. The court rejected the claim and granted summary judgment for defendant. "To evaluate Plaintiff's claim, the Court must determine the validity of the $1869.00 debt recognized by the state court in the May 2009 Writ of Execution. . . . [T]here is no question that the *Rooker- Feldman* doctrine bars a

district court from reviewing an FDCPA claim that challenges the validity of a debt authorized by a state court judgment." *Id.*

### C.   Moriarity's Claims Are Barred By The *Rooker-Feldman* Doctrine

Moriarity alleges she was never served with the summons and complaint in the State Court Action. *See* FAC, ¶¶ 17-18. When the state court entered judgment against Moriarity, however, it necessarily found that she <u>had</u> been properly served. *See* RJN, Ex. C at 1.a ("Defendant was properly served with a copy of the summons and complaint."); *see also* Cal. Code Civ. Proc. § 585(a) (requiring proper service upon defendant before judgment by default may be entered); *see also Bryant*, 681 F. Supp. 2d at 1208; *Williams*, 2010 WL 2889656 at *3. In fact, Moriarity subsequently filed a motion to vacate the judgment, alleging she was never served, and the state court denied that motion. *See* RJN, Exs. D & E.

To prevail here, Moriarity would need this Court to make a finding that is directly contrary to the findings that underlie the judgment. Her claims are "inextricably intertwined" with the judgment, because an adjudication in her favor here "would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules . . . ." *See Reusser*, 515 F.3d at 859; *see also Bryant*, 681 F. Supp. 2d at 1208; *Williams*, 2010 WL 2889656 at *3.

Moriarity also claims she does not owe the debt at issue in the State Court Action, and that the garnishment of her money was improper. *See* Complaint, ¶¶ 71-72, 79, 85-89. But the state court has already entered judgment against her and in favor of FIA, and has adjudicated that she does, in fact, owe the debt. *See* RJN,

Ex. C.  In addition, the state court recently denied Moriarity's motion to set aside the judgment.  *Id*. Ex. E.

Here, as in *Grant*, *Kelly*, *Bryant*, *Williams* and *Fleming*, each claim that Moriarity seeks to pursue in this Court would require her to establish facts that would undermine the validity of the state court judgment.  The Court cannot credit these claims without holding that the state court erred when it entered judgment for FIA.  The *Rooker-Feldman* doctrine prevents the Court from exercising subject matter jurisdiction over Moriarity's claims.  *See Bianchi*, 334 F.3d at 898 (district court lacks subject matter jurisdiction if claims raised in federal action are inextricably intertwined with state court decision).  Summary judgment is proper.

### D.    Moriarity's Claims Are Barred By Collateral Estoppel

The result is the same if Moriarity's claims are analyzed under traditional principles of collateral estoppel.  Moriarity is estopped from pursuing claims in this action which conflict with the state court's findings that she was properly served with the state court complaint, and that she is liable to FIA for the amount of the judgment.  As the California Supreme Court recently observed:

> The doctrine of collateral estoppel, or issue preclusion, is firmly embedded in both federal and California common law.  It is grounded on the premise that 'once an issue has been resolved in a prior proceeding, there is no further fact-finding function to be performed.' (*Parkland Hosiery Co. v. Shore* (1979) 429 U.S.322, 336, fn. 23, 99 S.Ct. 645, 58 L.Ed.2d 552).  'Collateral estoppel ... has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy, by preventing needless litigation.

*Murray v. Alaska Airlines, Inc.*, 50 Cal. 4th 860, 864 (2010) (citation omitted).  Where, as here, there is a subsequent action between two parties involving different claims, collateral estoppel "operates as an estoppel or conclusive

adjudication as to such issues in the second action which were actually litigated and determined in the first action." *Id*. at 867.

Moriarity may argue that nothing was "actually litigated" in the State Court Action, because FIA obtained a judgment by default.  She would be mistaken. Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. Of Educ*., 465 U.S. 75, 81 (1984); 28 U.S.C. § 1738.  California law is clear that a default judgment will satisfy the "actually litigated" requirement of collateral estoppel as to all issues that were necessary to the entry of the judgment.  *See, e.g., People v. Simms*, 32 Cal. 3d 468, 481 (1982) ("Even a judgment of default in a civil proceeding is res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint") (internal quotation marks omitted) (citing *Fitzgerald v. Herzer*, 78 Cal. App. 2d 127, 131 (1947)); *see also In Re Green*, 198 B.R. 564, 566 (B.A.P. 9th Cir. 1996) (same; applying California law).

The judgment in the State Court Action has preclusive effect even though Moriarity never responded to the complaint.  *See, e.g., Fitzgerald,* 78 Cal. App. 2d at 132 ("A judgment by default is as conclusive as to the issues tendered by the complaint as if it had been rendered after answer filed and trial had on allegations denied by the answer."); *In re Younie*, 211 B.R. 367, 374-75 (B.A.P. 9th Cir. 1997) (applying California law; giving collateral estoppel effect to a default judgment on fraud claim entered after debtor failed to respond).

Here, Moriarity's claims are barred by collateral estoppel, because she is seeking to re-litigate issues that were conclusively established against her in the State Court Action.  The default judgment against Moriarity was based upon a finding that she was served with the complaint, that she failed to respond to it, and that FIA was entitled to the judgment amount against her.  The state court has rejected her motion to set aside the judgment.  Moriarity cannot pursue claims in this case which seek to adjudicate that she was not served with the complaint, that there was insufficient evidence to support entry of a judgment, or that her funds were improperly obtained by the writ.

**E.     To The Extent Moriarity Seeks To Allege A Section 1692g(b) Claim It Also Fails**

Moriarity also alleges that Defendants violated section 1692g(b) of the FDCPA by "failing to verify or validate the disputed debt."  *See* FAC, ¶ 26c.  This claim must fail, however, because she did not send a timely written request for validation of the alleged debt.

Section 1692g(b) of the FDCPA requires that a debt collector cease collection of an alleged debt until the debt collector obtains verification of the debt, but only <u>if</u> a consumer notifies the debt collector <u>in writing</u> that she disputes the debt within the thirty-day period after the consumer's receipt of the written notice from the debt collector informing the consumer of her right to dispute the debt and request validation.  *See* 15 U.S.C. §§ 1692g(a)-(b).  Moriarity admits that she received a requisite notice but <u>does not</u> allege that she timely notified Hunt & Henriques in writing that she disputed or requested validation of the debt.  Nor is there any evidence of a written dispute.

Hunt & Henriques <u>did</u> send the notice required by section 1692g(a) in its initial demand letter to Moriarity, dated May 20, 2010, two months prior to filing the State Court Action.  *See* Hunt Decl. ¶ 3, Ex. A.  The letter contained the following notice, consistent with the requirements of 1692g(a) of the FDCPA:

> Federal law gives you 30 days after you receive this letter to dispute the validity of the debt or any part of it. If you do not dispute the validity of the debt, or any part of it, within that period, we will assume that the debt is valid. If you dispute the debt, or any part of it, in writing - by mailing a notice to this firm to that effect on or before the 30th day following the date you receive this letter - we will obtain and mail to you proof (verification) of the debt.  And if, within the same period, you request in writing the name and address of the original creditor (if different from our client), we will furnish you with that information too.

*See id*.  The May 20, 2010 letter was mailed to Moriarity's address, and was **<u>not</u>** returned to Hunt & Henriques as undeliverable.  *See id.* ¶¶ 3-4.

Although Moriarity claims she contacted Hunt & Henriques on May 25, 2010, and "demanded validation of [the] alleged debt," she never alleges that she mailed a <u>written</u> dispute or request for validation to Hunt & Henriques within thirty days of her receipt of the letter dated May 20, 2010.   *See* FAC at ¶ 24.

The earliest written correspondence the firm received from Moriarity regarding the Account was over five months later, in a letter dated November 7, 2010.  *See* Hunt Decl., Ex. B.  Even if that letter could be construed as containing a request for validation of the Account, it is nonetheless not timely under section 1692g(b) of the FDCPA.  The section 1692g claim must fail as a matter of law. *See Mahon v. Credit Bureau of Placer County, Inc.*,171 F.3d 1197, 1203 (9th Cir. 1999) ("The Mahons' tardy request for verification of the debt, therefore, did not trigger any obligation on the part of the Credit Bureau to verify the debt. Any claim under section 1692g(b) of the FDCPA must fail.").

1    **IV.    <u>CONCLUSION</u>**

2          All of the claims asserted by Moriarity fail because they are barred as a

3    matter of law by the *Rooker-Feldman* doctrine and by principles of collateral

4    estoppel.  Moriarity's claim under section 1692g(b) of the FDCPA also fails

5

6    because she does not allege and has no evidence that she ever sent a timely written

7    request for validation of the alleged debt.  For the foregoing reasons, the Court

8    should enter summary judgment for Defendants.

9

10   DATED: March 12, 2013              SIMMONDS & NARITA LLP
11                                      TOMIO B. NARITA
                                        ARVIN C. LUGAY
12

13

14                                 By:   /s/Arvin C. Lugay
                                        Arvin C. Lugay
15                                      Attorneys for defendants
                                        Janalie Henriques and
16                                      Hunt & Henriques

17

18

19

20

21

22

23

24

25

26

27

28