1
2
3
4
5
6
7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   LINDA MORIARITY,                    )   Case No.: 1:11-cv-01208 - JLT
                                          )
12              Plaintiff,               )   ORDER GRANTING IN PART DEFENDANTS'
                                          )   MOTION FOR SUMMARY JUDGMENT
13        v.                             )
                                          )   (Doc. 35)
14   JANALIE HENRIQUES, et al.,          )
                                          )
15              Defendants.              )
                                          )
16   _____  )

17        Defendants Janalie Henriques and Hunt & Henriques Law Firm ("Defendants") seek summary

18   judgment, or in the alternative summary adjudication, in this action for violations of the Fair Debt

19   Collection Practices Act and the California Fair Debt Collections Practices Act.  (Doc. 35).  On April 3,

20   2013, Plaintiff Linda Moriarity ("Moriarity" or "Plaintiff") filed her opposition to the motion (Docs.

21   38-40), to which Defendants filed a reply on April 10, 2013. (Doc. 42).  The Court heard oral

22   arguments from the parties on April 17, 2013.  For the following reasons, Defendants' motion for

23   summary judgment is **GRANTED IN PART**.

24   **I.        PROCEDURAL HISTORY**

25        Plaintiff initiated this action by filing a complaint on July 21, 2011. (Doc. 1).  Because Plaintiff

26   requested to proceed *in forma pauperis*, the Court screened the complaint pursuant to 28 U.S.C §

27   1915A(b) on August 15, 2011.  (Doc. 5).  Plaintiff was directed to either file an amended complaint or

28   notify the Court of her willingness to proceed on claims found to be cognizable.  *Id.*  On September

1

16, 2011, Plaintiff filed her First Amended Complaint.  (Doc. 7).  Therefore, the Court screened the amended pleading, and found Plaintiff stated cognizable claims for the violation of the Fair Debt Collection Practices Act against Defendants, including a claim for a violation of  15 U.S.C. § 1692f against Janalie Henriques, a violation of 15 U.S.C. § 1692g(b) against Hunt & Henriques Law Firm, and violations of 15 U.S.C. § 1692e(2), (8) by Janalie Henriques and Hunt & Henriques Law Firm. (Doc. 8 at 8).  In addition, the Court determined Plaintiff stated a cognizable claim for a violation of the Rosenthal Fair Debt Collection Practices Act against Hunt & Henriques Law Firm.  *Id.* at 8-9. Plaintiff chose to proceed only on these claims.  (Doc. 10).

## II.    STANDARDS FOR SUMMARY JUDGMENT

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Accordingly, summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

A party seeking summary judgment bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 323.  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).  A moving party demonstrates summary judgment is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed.R.Civ.P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e); *Matsuhita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586, n.11; Fed. R. Civ. P. 56(c).  Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Even if a motion for summary adjudication is unopposed, a court cannot grant summary adjudication solely because no opposition has been filed. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994).  The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  In resolving a motion for summary judgment, the Court examines the evidence provided by the parties, including pleadings depositions, answer to interrogatories, and admissions on file. *See* Fed. R. Civ. P. 56(c).

**III.     REQUESTS FOR JUDICIAL NOTICE**

In support of the motion for summary judgment, Defendant filed a request for judicial.  (Doc. 35-2).  Defendant seeks judicial notice of documents from the action *FIA Card Services, N.A. v. Linda D. Moriarity*, Kern County Superior Court case number M-1502-CL- 18384.  Specifically, Defendants seek judicial notice of (1) a certified copy of the complaint filed on July 20, 2010; (2) a file-endorsed

copy of the Proof of Service of the Summons, filed on August 12, 2010; (3) a copy of the judgment entered by Kern County Superior Court in favor of FIA Card Services on December 6, 2010; (4) the motion to set aside judgment filed by Plaintiff on November 30, 2012, as well as the opposition and reply related to the motion; and (5) a copy of the order denying the motion to set aside judgment issued on January 17, 2013.

The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). Court records are sources whose accuracy cannot reasonably be questioned. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D. Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989). In addition, Plaintiff does not deny the authenticity of the motion to set aside default, the opposition, or her reply. Accordingly, Defendants' request for judicial notice is **GRANTED**.

## IV.    UNDISPUTED MATERIAL FACTS[1]

FIA Card Services, N.A. retained the law firm of Hunt & Henriques to collect a credit card debt for an account number ending 1078, and under the name of Linda D. Moriarity (Doc. 35-1, ¶ 1). On May 20, 2010, Hunt & Henriques sent Moriarity a letter, "advising her that FIA ha[d] retained the firm to make a demand for payment in full on . . . the Account and informing her right to dispute the debt or any portion of it." *Id.*, ¶ 3. On May 28, 2010, Moriarity mailed a response to Hunt & Henriques via Certified Mail #7009282000021180025, "demanding verification/validation of the alleged debt and disputing it." (Doc. 39, ¶ 2).

On July 20, 2010, FIA Card Services, represented by Defendants, initiated an action in Kern County Superior Court by filing a complaint against Plaintiff in Case No. M-1502-CL-18384. (Doc.

---

[1] The parties failed to comply with the Court's scheduling order and Local Rules, which instruct the parties to file a joint statement of undisputed facts. (Doc. 27 at 4) ("**In addition to the requirements of Local Rule 260, the moving party shall file a joint statement of undisputed facts**") (emphasis in original). Rather, Defendants filed a statement of undisputed facts in support of their motion for summary judgment on March 12, 2013 (Doc. 35), and Plaintiff filed a statement of undisputed facts in support of her opposition on April 3, 2013 (Doc. 39). Thus, the Court was required to synthesize the facts and here, refers only to the facts or portions thereof that are deemed undisputed.

35-1, ¶ 6).  FIA Card Services filed a proof of service on August 12, 2010, which indicated Moriarity had been served personally on August 5, 2010, with several documents, including the summons and complaint.  (Doc. 35-2 at 10).  On December 6, 2010, the state court entered default judgment against Moriarity, finding (a) she was properly served with a copy of the summons and complaint and (b) she failed to answer the complaint or appear and defend the action within the time allowed by law.  *Id.* at 13.  Thus, judgment was entered in favor of FIA Card Services in the amount of $7,762.31.  *Id.* at 14.

Moriarity filed a notice of motion to set aside the entry of default judgment in Case No. M-1502-CL-18384 on December 27, 2012.  (Doc. 35-1, ¶ 9; Doc. 35-2 at 16).  Moriarity asserted "she had no knowledge of the filed complaint, having never been served, either personally or any other manner . . ."  (Doc. 35-2 at 18).  The court held a hearing on the motion to set aside default judgment, and found "[t]he plaintiff's summons and complaint were properly served."  (Doc. 35-2 at 83).  Therefore, Moriarity's motion to set aside the entry of judgment was denied on January 17, 2013.  *Id.*

## V.    DISCUSSION AND ANALYSIS

Under the provisions of the Fair Debt Collection Practices Act ("FDCPA"), debt collectors are prohibited "from making false or misleading representations and from engaging in various abusive and unfair practices."  *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).  To establish a violation of the FDCPA, Plaintiff must show: (1) she was a consumer (2) who was the object of a collection activity arising from a consumer debt, and (3) the defendant is a "debt collector" as defined by the FDCPA, (4) who engaged in an act or omission prohibited by the FDCPA.  *Miranda v. Law Office of D. Scott Carruthers*, 2011 WL 2037556, at *4 (E.D. Cal. May 23, 2011) (citing *Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004)).

Here, Plaintiff asserts Defendants are liable for several acts prohibited by the FDCPA, including "false representation of . . . the character, amount, or legal status of any debt" and "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" (15 U.S.C.§ 1692e); using "unfair or unconscionable means to collect or attempt to collect any debt" (15 U.S.C. § 1692f); and failing to cease collection of the debt upon written notification that the debt was disputed (15 U.S.C. § 1692g(b)).

California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), "like its federal counterpart, is designed to protect consumers from unfair and abusive debt collection practices." *Robinson v. Managed Accounts Receivable Corp.*, 654 F.Supp.2d 1051, 1060 (C.D. Cal. 2009) (citing Cal. Civ. Code § 1788.1).  The provisions of FDCPA are incorporated into the RDCPA under Cal. Civ. Code § 1788.17.  Consequently, conduct by a debt collector that violates the FDCPA violates RFDCPA as well.  *See, e.g., id.; Hosseinzadeh v. M.R.S. Assoc.*, 387 F.Supp.2d 1104, 1118 (C.D. Cal. 2005); *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 548 (N.D. Cal. 2005).

It is not disputed that Plaintiff is a consumer, or that Defendants were collecting a debt within the meaning of DFCPA and RFDCPA.  Rather, Defendants contend Plaintiff's claims are barred by the *Rooker-Feldman* doctrine because "[t]o prevail here, Moriarity would need this court to make a finding that is directly contrary to the findings that underlie the judgment" in the state court action. (Doc. 35 at 16).  In addition, Defendants assert the claims are barred by the doctrine of collateral estoppel, because Plaintiff "is estopped from pursuing claims in this action which conflict with the state court's findings that she was properly served with the state court complaint, and that she is liable to FIA for the amount of the judgment." *Id.* at 37.  Finally, Defendants argue Plaintiff's claim under Section 1692g(b) of the FDCPA fails because the debt was validated when Plaintiff was served with summons and complaint from FIA Card Services.  (Doc. 42 at 8).

### A.    Applicability of the *Rooker-Feldman* Doctrine

Judgments entered by a state court are entitled to "full faith and credit" in federal court.  *See* 28 U.S.C. § 1738.  Under the *Rooker-Feldman* doctrine, a party may not seek appellate review in federal court of a decision made in a state court.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  The Ninth Circuit explained,

> Typically, the Rooker Feldman doctrine bars federal courts from exercising subject-matter jurisdiction over a proceeding in which a party losing in state court seeks what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the losers federal rights.

*Doe v. Mann*, 451 F.3d 1038, 1041-42 (9th Cir. 2005); *see also Exxon Mobile Corp v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 292-93 (2005) (the *Rooker-Feldman* doctrine precludes a district

court from appellate review of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced . . ."). Accordingly, the district court lacks jurisdiction over "claims . . . 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling." *Bianchi v. Rylaarsdam*, 334 F.3d 894, 898 (9th Cir. 2003) (citing *Feldman*, 460 U.S. at 483, 485)).

Defendants assert Plaintiff's claims under sections 1692e and 1692f of the FDCPA and section 1788.15 of the RFDCPA are barred because "[t]his Court, and other district courts in California, have held that the *Rooker-Feldman* doctrine bars litigants from pursuing FDCPA claims based on allegations that a default judgment was improper, either because the debtor allegedly was not served, or allegedly does not owe the debt as adjudicated by the state court. (Doc. 35 at 13-14) (citing *Grant v. Unifund CCR Partners, et al.*, 842 F. Supp. 2d 1234 (C.D. Cal, 2012); *Bryant v. Gordon & Wong Group, P.C.*, 681 F. Supp. 2d 1205 (E.D. Cal. 2010); *Williams v. Calvary Portfolio Services, LLC,* 2010 WL 2889656 (C.D. Cal. July 20, 2010); *Fleming v. Gordon & Wong Law Group, P.C.*, 723 F. Supp. 2d 1219 (N.D. Cal. 2010)). According to Defendants, to prevail, Plaintiff "would need this Court to make a finding that is directly contrary to the findings that underlie the judgment." *Id.*

On the other hand, Plaintiff argues the *Rooker-Feldman* doctrine is inapplicable to her claims because she "is seeking damages from DFCPA improprieties and injuries," "not … reversal of the state court decision." (Doc. 38 at 9) (citing *Evans v. Cordray*, 424 Fed. App'x 537 (6th Cir. 2011)). According to Plaintiff, "[t]he state court case was on a decision as to whether a debt was owed." *Id.* at 11. Plaintiff explains she is not challenging the judgment from the state court action, "but rather the unlawful manner in which [Defendants] went about their collection activities." *Id.* at 9. She contends she "does not seek to 'undercut the state ruling' or ask the district court to interpret the application of state laws or procedural rules." *Id.* at 11.

### 1.     FDCPA Section 1692e

The FDCPA prohibits use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt" by a debt collector, including "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). In addition, debt collectors are prohibited from "[c]ommunicating or threatening to communicate to any person credit

1   information which is known or which should be known to be false, including the failure to

2   communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

3           Here, Plaintiff alleges Defendants violated Section 1692e by filing a complaint in the state court

4   and including "knowingly false information as to Plaintiff's credit, by claiming an erroneous

5   obligation." (Doc. 7 at 4). According to Plaintiff, she notified Defendants that the debt was not hers,

6   yet Defendants filed a complaint in the state court action characterizing the debt as belonging to

7   Plaintiff. (Doc. 7 at 5). Defendants assert that "the state court has already entered judgment against

8   [Plaintiff] and in favor of FIA, and has adjudicated that she does, in fact, owe the debt." (Doc. 35 at

9   16). As a result, Defendants argue the *Rooker-Feldman* doctrine bars litigation of this claim. *Id.*

10          Significantly, the *Rooker-Feldman* doctrine "prohibits a federal district court from exercising

11  subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Reusser v.*

12  *Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (internal citations and quotation marks

13  omitted). Previously, this Court found a plaintiff was "challenging the default against him" in the state

14  court where he alleged he was never served with the complaint in the state court, and "his bank

15  accounts were garnished without any prior notice." *Bryant*, 681 F. Supp. 2d at 1208. The Court

16  explained the "net effect" of the plaintiff's FDCPA claims was that he was "seeking to undermine the

17  state court judgments." *Id.* Consequently, the Court concluded the *Rooker-Feldman* doctrine

18  prohibited review of the plaintiff's claims that the defendant had violated the FDCPA and RFDCPA.

19  *Id.* Similarly, in *Williams*, a plaintiff alleged violations of Section 1692e, asserting the defendants

20  violated Section 1692e by "seeking a judgment against Plaintiff through a lawsuit which []he had

21  never been served with," and by "attempting to collect a debt from Plaintiff that was not his, despite

22  proof that his identity had been stolen." 2010 WL 2889656, at *3. The Northern District determined

23  the claims were barred by the *Rooker-Feldman* doctrine, because "[b]y way of default judgment, the

24  state court found that Plaintiff. . . is liable for the debt." *Id.*

25          Because this Court is unable to review the finding of the state court regarding Plaintiff's

26  obligation to pay the debt, it lacks subject matter jurisdiction over Plaintiff's claims for violations of

27  Section 1692e pursuant to the *Rooker-Feldman* doctrine. Accordingly, Defendants' motion for

28  summary adjudication of Plaintiff's Section 1693e claims is **GRANTED**.

2.      FDCPA Section 1692f

The FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  Although the FDCPA does not define "unfair" or "unconscionable," Section 1692f provides eight examples of violative conduct "without limiting the general application" of the statute.  *See id.*  Notably, "[t]he filing of a lawsuit alone is neither unfair nor unconscionable." *Medialdea v. Law Office of Evan L. Loeffler PLLC*, 2008 U.S. Dist. LEXIS 109013 (W. Wash. June 19, 2008).  However, the filing of "a lawsuit to which there appears to exist a complete defense, without first making a reasonable inquiry as to whether the defense is in fact not complete," may be a violation of § 1692f.  *See Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987) (finding a defendant violated § 1692f where the suit was barred by the statute of limitations and the attorney failed to make a reasonable inquiry that the limitations period was to be tolled).

In this case, Plaintiff alleged "Janalie Henriques violated 15 U.S.C. § 1692f by [using] unfair and unconscionable means to collect a debt, by signing and causing said complaint to be filed, having knowledge the alleged account was invalid and not that of Plaintiff." (Doc. 7 at 4).  However, Defendants have presented evidence that Janalie Henriques did not sign the complaint filed before the state court.  Rather, it was signed by Donald Sherrill. (Doc. 35-2 at 6).  Further, for the reasons set forth above, to the extent that Plaintiff seeks review of the decision that she owed the identified debt to FIA Card Services, the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Consequently, the motion for summary adjudication of this claim is **GRANTED**.

3.      RFDCPA Section 1788.15(a)

Plaintiff alleges Defendants violation RFDCPA Section 1788.15(a), which prohibits collecting or attempting to collect a debt through judicial proceedings "when the debt collector knows that the service of process . . . has not been legally effected."  Cal. Civ. Code § 1788.15(a).  Because the Court is unable to review or disturb the findings of the state court that Plaintiff received proper service, the Court lacks subject matter jurisdiction over this claim.  Therefore, Defendants' motion for summary adjudication of this claim is **GRANTED**.

///

///

9

**B.      Collateral Estoppel**

Defendants contend that "under traditional principles of collateral estoppel[,] Moriarity is estopped from pursuing claims in this action that conflict with the state court's findings that she was properly served with the state court complaint and that she is liable to FIA for the amount of the judgment." (Doc. 35 at 17).  The doctrine of collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).  However, because the Court has determined it lacks subject matter jurisdiction over the claims identified by Defendants, it need not evaluate the claims under the doctrine of collateral estoppel.

**C.      FDCPA Section 1692g(b)**

When "a consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed… the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . ." 15 U.S.C. § 1692g(b).  A copy of the verification must be "mailed to the consumer by the debt collector." *Id.*

In this case, Hunt & Henriques mailed Plaintiff a letter on May 20, 2010, advising Plaintiff that FIA Card Services had "retained the firm to make a demand for payment in full" on an account in the name of Linda D. Moriarity. (Doc. 35-1, ¶ 3).  Plaintiff has presented evidence that she mailed a response to the letter via certified mail on May 28, 2010, in which she notified Hunt & Henriques that she was "demanding verification/validation of the alleged debt and disputing it." (Doc. 38, Exh. 2-3; Doc. 39, ¶ 2;).  In addition, Plaintiff presented a "Track & Confirm" notice, indicating the letter was delivered at 10:49 a.m. on June 1, 2010.  (Doc. 38, Exh. 4).  Thus, Plaintiff notified the debt collector of her dispute within the thirty-day period prescribed by Section 1692g.

Defendants contend, "Even if Moriarity did send a written validation request within the thirty-day validation period . . . Defendants properly validated the debt when they served her with the summons and compliant in the state court action." (Doc. 42 at 8).  According to Defendants, "The state court complaint is a written statement confirming the identities of the parties and that the amount

the creditor (FIA) claimed was due from Moriarity. This is all of the information that must be supplied in order to verify a debt." *Id.*

The FDCPA requires the debt collector to "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt." 15 U.S.C. § 1692g(b).  The Ninth Circuit has determined, as Defendants observe, "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Clark*, 460 F.3d at 1173-74.  In essence, Section 1692g(b) gives a debt collector a choice: "it either may choose not to verify the debt and abandon its collection efforts, or it may decide to verify the debt and resume the collection activities *once the requested validation has been provided*." *Golliday v. Chase Home Finance, LLC*, 761 F.Supp. 629, 637 (W.D. Mich. 2011) (citing *Purnell v. Arrow Fin. Servs., LLC*, 303 Fed. App'x. 297, 304 (6th Cir. 2008)) (emphasis added).

The Ninth Circuit has observed that litigation is "consumer-debt-collection-activity." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1032 (9th Cir. 2010) (citing *Heintz v. Jenkins*, 514 U.S. 291, 295-299 (1995).  The Court noted that in *Heintz*, an attorney "contested the applicability of the FDCPA to his debt-collection efforts because he was a lawyer engaged in litigation," but "[t]he Supreme Court held that the FDCPA 'applies to attorneys who 'regularly' engage in consumer-debt-collection activity, *even when that activity consists of litigation*." *Id.* (emphasis added).  Thus, the Ninth Circuit concluded that the service of a complaint furthers the "effort to collect the debt through litigation." *Id.*

Moreover, other courts which have held that pursuing litigation before providing the requested verification of the debt violates the FDCPA.  For example, in *Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp. 2d 808 (M.D. N.C. 2011), the defendants argued "the summons and complaint are themselves the validation to which [a debtor] is entitled." *Id.* at 827.  The court disagreed, finding the defendants violated the FDCPA "by filing their lawsuit *before* complying with the verification requirement," because "the critical moment at which Defendants began their 'collection of the debt' with respect to the lawsuit was when they filed their complaint with the state court." *Id.* (emphasis in original). Similarly, in *Anderson v. Frederick J. Hanna & Associates*, 361 F.Supp.2d 1379, 1383 (N.D. Ga. 2005), the Court held that the filing of litigation after the request for the debt verification was

11

1  received, constituted a violation of the FDCPA and awarded summary judgment to the debtor.  Again,

2  in *McDaniel v. S. & Associates, P.C.*, 325 F. Supp. 2d 1210, 1220 (D. Kan. 2004), the court held that

3  filing a foreclosure petition and having it served without first providing the requested debt verification

4  violated the FDCPA:

5  > The summons and foreclosure petition required the Tribbles to respond to the lawsuit or
6  > face the consequences of a default judgment, thus ignoring their rights under the
   > FDCPA.  Furthermore, the rest of Defendant's actions in pursuing the foreclosure also
7  > violated the grace period provided by the FDCPA.  This includes the filing of the
   > amended petition, the sheriff's service of process relating to the amended petition, and
   > the letters to the Tribbles concerning the publication of the lawsuit.

8

9  *Id.* at 1220.

10       The situation here is similar to the facts presented to the courts in *Garcia-Contreras* and

11  *McDaniel*.  Though Plaintiff demonstrates she sought verification of the debt, Defendants fail to

12  explain how filing a lawsuit, obtaining summons, and sending it out for service constitutes "ceasing"

13  collection efforts pending the debt verification.  Likewise, the Court rejects Defendants' position that

14  debt verification can be provided in compliance with 15 U.S.C. § 1692g(b) in a complaint for

15  damages—the very purpose of which is to collect the debt.[2]  The suggestion that this constitutes

16  ceasing the collection effort is contrary to common sense and the express provisions of  15 U.S.C. §

17  1692g(b).

18       Because Plaintiff has presented evidence that she notified Hunt & Henriques of her dispute and

19  they did not provide validation of the debt, summary adjudication of this claim is **DENIED**.

20  _____

21       [2]  In support of this position, Defendants identified several case citations for the Court after the hearing.  (Doc.
44).  However, the cases did not address whether the initiation of a lawsuit was a collection activity, or whether the service
of a complaint was a permissible method to provide verification of a debt to a debtor under the FDCPA.
22  The only case that remotely discussed this issue involved the initiation of a foreclosure action where the defendant claimed
the litigation privilege afforded under state law, avoided liability under the FDCPA for any statements made in the
23  complaint.  *Trent v. Mortgage Electronic Registration Systems, Inc,* 618 F.Supp.2d 1356, 1360-1361 (M.D.Fla. 2007).  In
*Trent*, the court determined the foreclosure action was not a debt collection activity because it sought only to regain
24  possession of the property and did not seek to recover the debt.  Here, of course, the litigation initiated specifically
sought—and received—a judgment to recover the debt.  Thus, the Court finds *Trent* to be inapplicable.  Moreover, in
25  *Acosta*—another case cited by Defendants--the court determined that FDCPA liability did not attach *only* because the
litigation was filed *before* the debtor's request for verification of the debt had been received.  *Acosta v. Campbell*, 2006 WL
26  3804729 at *4 (M.D. Fla. Dec. 22, 2006) aff'd, 309 F. App'x 315 (11th Cir. 2009) ("Because the Law Office had not
received Acosta's verification request before July 11, 2003, when it mailed the lawsuit to the Seminole County Clerk to be
27  filed, the Law Office could not have violated the FDCPA by filing the foreclosure suit on July 16, 2006, when it was
already in the possession of the Seminole County Clerk and the Clerk was required to docket it.").  Indeed, *Acosta*
28  distinguished *Anderson*, 361 F.Supp.2d at 1383, which the Court discusses above.

### D.      Liability of Janalie Henriques

Plaintiff's complaint alleges Janalie Henriques should be held liable because she filed litigation against her to recover the debt and alleges the complaint was "signed by Janalie Henriques of Hunt and Henriques Law Firm." (Doc. 7 at 2, 4)  Likewise, Plaintiff alleges Ms. Henriques should be held liable for failing to provide the debt verification before filing the litigation.  Id.

However, the undisputed evidence demonstrates Ms. Henriques did not file the litigation against Plaintiff and, instead, the complaint was signed by a different attorney.  (Doc 35-2 at 6; Doc. 38 at 38)  At the hearing, Plaintiff admitted she made a mistake in thinking the complaint was signed by Ms. Hanriques.  Thus, the motion for summary judgment by Janalie Henriques is **GRANTED**.

## VI.      CONCLUSION AND ORDER

For the foregoing reasons, the Court lacks subject matter jurisdiction over Plaintiff's claims that Defendants are liable for violations of Section 1692e and 1692f of the FDCPA and Section 1788.15(a) of the RFDCPA.  The claim for a violation of Section 1692g(b) is not subject to the *Rooker-Feldman* doctrine, and Plaintiff demonstrated there is a genuine issue of a material fact in support of her claim. Thus, summary adjudication of this claim is not appropriate.  *See* Fed R. Civ. P. 56(e).

Accordingly, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Summary adjudication on the claims for violations of FDCPA Sections 1692e(2), 1692e(8), and 1692f is **GRANTED**;

2.      Summary adjudication on the claim for a violation of RDCPA Section 1788.15(a) is **GRANTED**;

3.      Summary adjudication on the claim for a violation of the FDCPA Section 1692g(b) is **DENIED**; and

///
///
///
///
///

1        4.       The Clerk of Court is directed to enter judgment in favor of Defendant Janalie

2             Henriques and against Plaintiff Linda Moriarity.

3

4

5 IT IS SO ORDERED.

6     Dated:   __**April 19, 2013**__                ___**/s/ Jennifer L. Thurston**__

7                                           UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28